STATE of Minnesota, Respondent,

v.

B.Y., Petitioner, Appellant.

No. C7–01–897.

Supreme Court of Minnesota.

April 24, 2003.

Mary M. McMahon, McMahon & Associates, Roseville, MN, for Appellant.

Mike Hatch, Minnesota Attorney General, Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant Ramsey County Attorney, St. Paul, MN, for Respondent.

## OPINION

GILBERT, Justice.

Appellant, B.Y., was on Extended Jurisdiction Juvenile (EJJ) probation with a stayed 108–month sentence pursuant to a plea agreement under which he pleaded guilty to kidnapping and committing a crime for the benefit of a criminal gang. In a hearing on February 22, 2001, the district court revoked appellant's EJJ designation for violating probation and, finding no mitigating factors, executed the 108–month sentence. Appellant appealed to the Minnesota Court of Appeals arguing that the EJJ statute, Minn.Stat. § 260B.130, subd. 5 (2002), controls and does not require the execution of appellant's stayed sentence. Therefore, appellant argued that the EJJ statute conflicts with Minn. R. Juv. P. 19.09, subd. 3, which the district court relied upon when appel-

lant's sentence was executed, and that the statute should control. The court of appeals affirmed the district court and concluded that the EJJ statute, absent written findings of mitigating factors, requires the execution of appellant's sentence. The court of appeals did not reach the second issue raised by appellant as to whether the rule or the statute controls.

In this appeal, appellant argues that the EJJ statute requires that the age of the offender at the time of the offense and the severity of the offense be considered in determining the appropriate sanction for a violation of a condition of probation; and that the language of Minn.Stat. § 260B.130, subd. 5, controls over Minn. R. Juv. P. 19.09, subd. 3. We reverse the court of appeals and remand to the district court for further proceedings consistent with our ruling.

On February 9, 1998, appellant pleaded guilty to kidnapping and committing a crime for the benefit of a criminal gang for his part in the gang rape of a 12–year–old girl occurring December 14, 1997, when he was 15 years old. Under the terms of the plea agreement, appellant agreed to plead guilty to kidnapping and committing a crime for the benefit of a criminal gang and to testify truthfully at the trials of the other individuals involved in the crime. Minn.Stat. § 609.25, subd. 1(2); Minn.Stat. § 609.229, subd. 2. The kidnapping charge was a Level VII offense and had a presumptive prison sentence of 48 months.[1] Appellant's plea agreement called for a double durational departure from that sentence, resulting in a 96–month prison term. The crime for the benefit of a criminal gang charge had a presumptive sentence of 12 months consecutive to the underlying charge. Pursuant to the plea agreement, 12 months were added to the 96 months

for the kidnapping charge, amounting to a total of 108 months.

In accordance with the plea agreement, appellant was sentenced to the custody of the Commissioner of Corrections of the State of Minnesota, the execution of the adult sentence was stayed, and appellant was designated an Extended Jurisdiction Juvenile until the age of 21. *See* Minn. Stat. § 260B.130, subd. 4(a) (2002). At the conclusion of the sentencing hearing, the district court notified appellant that if he violated the "terms and conditions" of probation, the prison sentence of 108 months would be executed. The plea agreement included the conditions that appellant testify truthfully if subpoenaed in the trials of the others involved in the crime, complete a juvenile rehabilitation program, not associate with any known gang members and have no contact with the victim. No other specific terms of probation were discussed in the hearing where the plea agreement was accepted nor apparently set forth in the disposition order where the terms of the agreement were imposed.

Over a year later, in June of 1999, after successfully completing the juvenile rehabilitation program at Woodland Hills, appellant appeared for a hearing in district court. The court approved the favorable recommendation of Woodland Hills and appellant was returned to his home. Again, at this hearing, the court reminded appellant that the 108–month sentence remained, and a violation of probation before he turned 21 would result in the execution of that sentence. The court in reference to the EJJ probationary period stated, "So while it seems like a long time, it's not a long time when we are not asking a lot of you except don't commit any new crimes and keep in touch."

1. Minnesota Statutes § 609.11, subds. 1 and 9 (2002), specify kidnapping as a mandatory commitment to the Commissioner of Corrections for imprisonment.

After another year and a half had passed, on February 9, 2001, appellant admitted, in a probation violation hearing, that he had violated his 9 p.m. curfew. The record before us does not include a transcript of that February 9, 2001 hearing. However, appellant's brief states that the probation violation hearing was in front of a different judge than the subsequent disposition hearing and that appellant admitted to the violation in the probation violation hearing. This was the first time the appellant had been brought to court for a probation violation hearing. On February 22, 2001, a disposition hearing was held in district court on that probation violation. A Ramsey County juvenile probation officer appeared for the probation department. He informed the court that the probation department and staffing committee recommended that appellant's EJJ designation be revoked. At the hearing, the state argued that it would not be seeking revocation of probation for a mere curfew violation had there not been multiple violations and had appellant not shown that he was unamenable to supervision.

The probation officer testified that appellant had been transferred to enhanced probation ("stricter level of supervision"), because he was not following the conditions of regular probation supervision, including coming into the office once a week to check in with his probation officer. According to the probation officer the transfer to enhanced probation occurred because there was a 1 to 2 month period where appellant did not check in with his probation officer, and there was concern that he was failing to attend school and not residing at his parents' home full-time.

The state asserted that prior to the curfew violation at issue, appellant had been placed at the Juvenile Detention Center on a 24–hour waiver (hold) for breaking curfew on a previous occasion. For yet another violation, appellant was given 16 hours on a work crew to be served on a Saturday and Sunday. Appellant was present on Saturday but did not show up the next day for the remaining 8 hours of work. Appellant was told to make up the 8 hours the following week, but he refused to do so. Following that incident, appellant was placed in the Adult Detention Center for curfew and school attendance violations. After being placed for 48 hours in the Adult Detention Center, at 7 p.m. an officer took appellant home. At 9:20 p.m., his probation officer and another officer returned to appellant's home. According to his probation officer, appellant was not at home even though his curfew was 9 p.m. and had been since November. The district court found that appellant knew of this curfew. It is this curfew violation, which the court believed was flagrant, that resulted in the execution of his entire 108–month sentence.

Complying with a curfew was not mentioned in appellant's original plea agreement, nor does it appear that it was provided for in the disposition order, nor stated as a condition of the stayed sentence. Rather, it was apparently implemented by the probation officer and more strictly enforced as time passed. Appellant argued that this curfew violation was at most a technical violation.

The district court found that the appellant, in his February 9, 2001 probation violation hearing, had admitted that he had failed to be home by his 9 p.m. curfew, and that missing curfew amounted to a violation of probation. Although a curfew was not part of the original plea agreement, pursuant to Minn. R. Juv. P. 19.09, subd. 3(C)(2), the court used the one admitted curfew violation to execute the previously imposed sentences for kidnapping and committing a crime for the benefit of a

criminal gang. The court stated that while not necessarily agreeing with the state's position that appellant's violation showed that he was likely to start committing crimes, appellant was not doing the things he needed to insure public safety. The court stated there were no mitigating factors, but made no indication of what would be considered mitigating factors in this situation. The court then stated, "As I understand the rules and the law as it relates to the EJJ status, if there are no mitigating factors, there is no way that I can legally continue you on EJJ status." Appellant's EJJ status was revoked and the 108–month sentenced was executed.

## I.

■ The district court ruled that there were no mitigating factors present; thus pursuant to Minn. R. Juv. P. 19.09, subd. 3(C)(2), EJJ status must be revoked and the previously stayed sentence must be executed. Appellant argues that Minn. Stat. § 260B.130, subd. 5 requires that the age of the offender at the time of the underlying offense be considered in determining the sanction for violating EJJ probation. Appellant further argues that Minn.Stat. § 260B.130, subd. 5, conflicts with Minn. R. Juv. P. 19.09, subd. 3(C)(2), and the statute controls.

■ Statutory interpretation is a question of law, which we review de novo. *State v. Misquadace*, 644 N.W.2d 65, 68 (Minn.2002). When interpreting a penal statute the rule of strict construction applies and all reasonable doubts concerning legislative intent are resolved in favor of the defendant. *State v. Olson*, 325 N.W.2d 13, 19 (Minn.1982).

Minnesota Statutes § 260B.130, subd. 5, states in relevant part:

> After the hearing, if the court finds that reasons exist to revoke the stay of execution of sentence, the court shall treat

the offender as an adult and order any of the adult sanctions authorized by section 609.14, subdivision 3, except that no credit shall be given for time served in juvenile facility custody prior to a summary hearing. If the offender was convicted of an offense described in subdivision 1, clause (2), and the court finds that reasons exist to revoke the stay, the court must order execution of the previously imposed sentence unless the court makes written findings regarding the mitigating factors that justify continuing the stay.

The above referenced subdivision 1, clause (2) is found at Minn.Stat. § 260B.130, subd. 1(2) (2002), and provides as follows:

> the child was 16 or 17 years old at the time of the alleged offense; the child is alleged to have committed an offense for which the sentencing guidelines and applicable statutes presume a commitment to prison or to have committed any felony in which the child allegedly used a firearm; and the prosecutor designated in the delinquency petition that the proceeding is an extended jurisdiction juvenile prosecution[.]

Minnesota Statutes § 260B.130, subd. 1(2), first appears in the statute to articulate a particular set of circumstances that would result in designating the proceeding an extended jurisdiction juvenile prosecution. It consists of three separate clauses, which together with the rest of subdivision 1, form one complete sentence. The first of the three clauses within subd. 1(2) articulates the age of the child for purposes of designation. The second clause describes the type of offense. The third articulates what action the prosecutor must take to have the proceeding designated EJJ.

The language in Minn.Stat. § 260B.130, subd. 5, refers to "an offense described in

subdivision 1, clause (2)." Only the second clause in subd. 1(2) describes an offense. A plain reading of the statute reveals that the legislature referred to subd. 1(2) rather than repeating the language describing offenses listed under that subdivision, and was not attempting to limit its application to those persons designated under subd. 1(2). As such, the plain language of the statute requires the court to look only to the second clause within Minn.Stat. § 260B.130, subd. 1(2). Since the offense described in that clause makes no mention of the age of the offender, Minn.Stat. § 260B.130, subd. 5 is properly read to require the execution of the adult sentence, absent written mitigating factors, regardless of the age of the defendant at the time of the original offense.

We interpret statutes so as to effectuate the intent of the legislature and when the words of the law are "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2002). The language of Minn.Stat. § 260B.130, subd. 5, is not ambiguous. The sanction in Minn.Stat. § 260B.130, subd. 5, is not limited to offenders who were 16 or 17 at the time of the underlying offense.

Thus, Minnesota Statutes § 260B.130, subd. 5, does not conflict with the rule relied on by the district court as it relates to whether the section applies to EJJ offenders who were 15 at the time of the underlying offense. Minnesota Rules of Juvenile Procedure 19.09, subd. 3(C)(2), provides:

If the court finds upon clear and convincing evidence that any provisions of the disposition order were violated, or if the probationer admits the violation, and the extended jurisdiction juvenile conviction was for an offense with a presumptive prison sentence or the probationer

used a firearm, the court shall order the execution of the sentence or make written findings indicating the mitigating factors that justify continuing the stay.

Both the rule and the statute apply to an EJJ offender regardless of the age of the offender at the time of the offense. *Id.;* Minn.Stat. § 260B.130, subd. 5.

## II.

We next address the applicability of *State v. Austin,* 295 N.W.2d 246 (Minn. 1980), in the EJJ probation revocation context. Although the appellant did not explicitly request that the *Austin* factors be considered, a review of whether EJJ revocation was proper in this case requires that we consider the issue. The state recognized as much, and devoted considerable attention to the issue in its brief to this court.

In *Austin,* we adopted "a three-step analysis which requires that before probation be revoked, the court must 1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that the need for confinement outweighs the policies favoring probation." *Id.* at 250. The applicability of the *Austin* factors directly relates to the interpretation of Minn.Stat. § 260B.130, subd. 5, and this court has yet to address whether the *Austin* factors must be considered in the EJJ probation revocation context.

The statute at issue here provides, "If the offender was convicted of an offense described in subdivision 1, clause (2), and the court finds that *reasons exist to revoke the stay,* the court must order execution of the previously imposed sentence unless the court makes written findings regarding the mitigating factors that justify continuing the stay." Minn.Stat. § 260B.130, subd. 5 (emphasis added). In the EJJ context, we hold that all three of the *Austin* factors

must be considered when a court is determining whether "reasons exist to revoke the stay." [2]

In *Austin* we stated, "There must be a balancing of the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety." 295 N.W.2d at 250. The same balancing must occur under the facts here, where revocation of EJJ probation may result in the execution of an adult sentence.

In this case, the district court based its decision on Minn. R. Juv. P. 19.09, subd. 3(C)(2), not Minn.Stat. § 260B.130, subd. 5. In doing so, the court interpreted Minn. R. Juv. P. 19.09, subd. 3(C)(2), as requiring an almost reflexive execution of the adult sentence upon the appellant's admission to a curfew violation where the court did not believe any mitigating factors were present. While it appears that the rule was intended to parallel the statute, 12 Robert Scott & John O. Sonsteng, *Minnesota Practice—Juvenile Law and Practice* 345 (3d ed.2002), it does not contain the "reasons to revoke the stay" language found in the statute nor does it specifically incorporate our *Austin* rationale.[3] While this is of concern to us, even a strict application of this narrow reading of our law does not lead to an automatic revocation of the appellant's probation.

Under the facts of this case, it is not appropriate to base the execution of the stayed sentence on Minn. R. Juv. P. 19.09, subd. 3(C)(2). Even as written, the rule only allows for the execution of a previously stayed sentence, "[i]f the court finds

upon clear and convincing evidence that any provision of the disposition order were violated, or if the probationer admits the violation." Minn. R. Juv. P. 19.09, subd. 3(C)(2). Here, appellant admitted in a preceding hearing that he had violated his 9 p.m. curfew. However, the curfew does not appear to have been part of the disposition order. Therefore, his admission to violating the curfew cannot be the basis for executing his sentence under the rule, since it was not a provision of the disposition order. Minn. R. Juv. P. 19.09, subd. 3(C)(2).

Accordingly, we conclude the district court erred by revoking probation and executing appellant's sentence. We reverse the decision of the court of appeals and remand to the district court for reconsideration of whether the adult sentence should be executed under Minn.Stat. § 260B.130, subd. 5.

## III.

We now move to whether mitigating factors were present in this case. Both the rule and the statute provide for continuing the stay where mitigating factors justify that result. Because the issue of what are properly considered mitigating factors in regard to EJJ probation revocation is a question of first impression with the potential of reoccurring throughout the state and in fact may reoccur in this case upon remand, it is appropriate that we address the issue.

Here, the relevant mitigating factors are not those circumstances surrounding the

**2.** The court of appeals in *State v. Bradley* interpreted the EJJ statute as not requiring a court to consider the *Austin* factors. 592 N.W.2d 886, 888 (Minn.App.), rev. denied (Minn. July 28, 1999). We disagree.

**3.** To the extent that Minn. R. Juv. P. 19.09, subd. 3(C)(2), has failed to incorporate the

requirement that the *Austin* factors be considered where an adult sanction may be imposed, we direct the Supreme Court Advisory Committee on the Rules of Juvenile Procedure to review Minn. R. Juv. P. 19.09, subd. 3(C) and propose appropriate and needed amendments to it.

original offense, but rather the mitigating factors relating to the probation violation. The rule and statute at issue provide that unless the district court makes written findings of the mitigating factors, the previously stayed sentence must be executed. Minn. R. Juv. P. 19.09, subd. 3(C)(2); Minn.Stat. § 260B.130, subd. 5. The court explicitly indicated an inability to find the existence of mitigating factors in the present case. Unfortunately, the record before us does not reflect what factors the court looked to when determining that no mitigating factors were present.

We have recognized that where an adult is "particularly amenable to treatment in a probationary setting," it is a justifiable basis for downward departure from the sentence recommended under the sentencing guidelines. *See State v. Hennessy,* 328 N.W.2d 442, 443 (Minn.1983); *State v. Trog,* 323 N.W.2d 28, 31 (Minn.1982); *State v. Wright,* 310 N.W.2d 461, 462 (Minn.1981). So too may it be considered a mitigating factor, permitting the district court to refrain from executing a previously imposed sentence in an EJJ proceeding under Minn.Stat. § 260B.130, subd. 5. A defendant would only be subject to having the previously imposed sentence executed if there had been a probation violation. Although a probation violation can be considered as evidence potentially indicating unamenability to probation, the district court in its discretion may find it to be an anomaly in what has otherwise been a path to rehabilitation.

The appellant's amenability to probation was considered by the district court in this case. In the memorandum accompanying the order executing the previously imposed sentence the court stated, "It is clear to the court that the defendant is unamenable to probation supervision." However, in the course of the disposition hearing the court also stated, "Now I don't know that I necessarily agree with [the prosecutor] that this is showing that pretty soon you're going to be off committing crimes, but you certainly are not doing the kinds of things that we all need to know that you should be doing to insure public safety."

Prior to the curfew violation appellant had successfully completed a year in Woodland Hills inpatient juvenile rehabilitation program in Duluth. We have recognized that in the adult system successful completion of a chemical dependency program is relevant when determining that "a defendant is particularly suitable to individualized treatment in a probationary setting" so as to justify departure from a presumptively executed sentence. *State v. Clemmer,* 328 N.W.2d 739, 740 (Minn. 1983). Similarly, successful completion of the rigorous Woodland Hills rehabilitation program should be appropriately considered by the district court as a mitigating factor demonstrating amenability to probation.

Furthermore, the only probation violation of which appellant was notified, in writing, pursuant to Minn.Stat. § 260B.130, subd. 5, was the curfew violation. And, there is no indication the court imposed this condition. A 19–year–old violating a 9 p.m. curfew does little to demonstrate that he is not amenable to probation. Although appellant was warned by the probation officer of the curfew, it is probable that appellant did not fully comprehend the harsh sanction he would face for violating curfew. Similarly, it is more probable that such a violation is not evidence that appellant is likely to return to criminality. We have recognized that the imposition of sentences is the province of the judiciary. *Misquadace,* 644 N.W.2d at 68. Here, without specific court approval, the conditions of probation were enhanced by the probation officer. Then, in appel-

lant's first court appearance for a violation of probation, one of these new and less significant terms, instituted by a probation officer, was used to execute a 108–month sentence.

The fact that a curfew was not part of the plea, the disposition order, or a condition of the stayed sentence may be a mitigating factor reducing the degree of culpability and hence the sanction for violating it. The EJJ statute makes it the court's responsibility to set the disposition of the juvenile's sentence:

> (a) If an extended jurisdiction juvenile prosecution results in a guilty plea or a finding of guilt, the court shall:
>
> (1) impose one or more juvenile dispositions under section 260B.198; and
>
> (2) impose an adult criminal sentence, the execution of which shall be stayed on the condition that the offender not violate the provisions of the disposition order and not commit a new offense.

Minn.Stat. § 260B.130, subd. 4.

The court did not expressly prescribe any conditions beyond requiring that appellant keep in touch with his probation officer. Appellant apparently did not comply with that condition and, as a result, the probation department placed him on enhanced probation, which included the imposition of a curfew. While probation officers have discretion in establishing the terms of probation, ultimately the court is responsible for the sentence or disposition. Minn.Stat. § 260B.130, subd. 4.

Furthermore, the record does not contain the written findings relating to the original disposition order as required by Minn.Stat. § 260B.198, subd. 1(m) (2002). Apparently, the district court did initially find that it was in the best interests of appellant to go through the rehabilitation program at Woodland Hills and then be placed on probation rather than be incarcerated. The question then is how a curfew violation that was not part of the disposition order, nor expressly made a condition of probation by the court, should be treated in the context of mitigation and why "the best interests of the [appellant]" are now served by long-term incarceration in prison based · on the curfew violation. *Id.*

Appellant also offered some evidence to justify or excuse violating curfew and argued that it was at most a technical violation. His parents testified at the disposition hearing on his behalf. His father testified that B.Y. violated curfew because he was seeking after school employment and asked the court for forgiveness. His mother testified that he was a good son who followed her instructions and helped with household chores. The district court is in the best position to judge the credibility of this type of testimony. However, there were no findings on this issue. If the court on remand reaches the issue of the mitigating factors, findings on this testimony should also be expressly made.

If the appellant was an adult at the time of the underlying offense, the kidnapping charge he pleaded guilty to would have required a mandatory minimum period of incarceration. *See* Minn.Stat. § 609.11, subds. 1 and 9. Appellant, by entering EJJ, avoided that mandatory sentence, but now an even longer adult sentence has been executed as a result of a curfew violation. The legislature has granted the district courts many more options when there is a stayed sentence for an adult, and that adult has violated the terms of the stayed sentence. Minn.Stat. § 609.14, subd. 3(2) (2002). The court may execute the sentence, again stay the execution of the previously imposed sentence, or order an array of intermediate sanctions. *Id.; see also* Minn. R.Crim. P. 27.04, subd. 3. The potential intermediate sanctions in the

adult system, which may be imposed upon a finding that the conditions of the stay have been violated, include but are not limited to the following:

> incarceration in a local jail or work-house, home detention, electronic monitoring, intensive probation, sentencing to service, reporting to a day reporting center, chemical dependency or mental health treatment or counseling, restitution, fines, day-fines, community work service, work service in a restorative justice program, work in lieu of or to work off fines and, with the victim's consent, work in lieu of or to work off restitution.

Minn.Stat. § 609.135, subd. 1(b) (2002).

 In the adult context we have held, "The decision to revoke cannot be 'a reflexive reaction to an accumulation of technical violations' but requires a showing that 'the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity.'" *Austin*, 295 N.W.2d at 251 (citations omitted). In the EJJ context where the determination, absent mitigating factors, that a defendant has violated probation may result in the execution of a lengthy prison sentence, a district court in its mitigation findings must be certain to take all of the circumstances of probation into consideration. The public is not particularly well served by automatic incarceration on a technical violation. If the violation is one of youthful obstinance, it may not always foreclose a determination that an EJJ defendant is amenable to probation. This is especially true because a mitigation finding, when reduced to writing, can be sufficient to avoid the harsh and inflexible result otherwise required by Minn.Stat. § 260B.130, subd. 5 or Rule 19.09, subd. 3(C)(2). In the final analysis, we conclude that for a court to revoke probation and execute a previously stayed adult sentence for tech-

nical violations of EJJ probation, the violations must demonstrate that the offender "cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251.

We reverse and remand to the district court for further proceedings consistent with our ruling.

Reversed and remanded.