**STATE of Minnesota, Respondent,**

v.

**Steven Joe BOLLIN, Appellant.**

No. A03–603.

Court of Appeals of Minnesota.

Oct. 24, 2003.

John M. Stuart, State Public Defender, Suzanne M. Senecal–Hill, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge, and TOUSSAINT, Chief Judge, and STONEBURNER, Judge.

## OPINION

WILLIS, Judge.

While on probation as an extended-jurisdiction juvenile (EJJ) following a first-degree criminal-sexual-conduct conviction, appellant committed fourth-degree criminal sexual conduct. The district court revoked appellant's probation and executed a 144–month adult sentence for the earlier conviction. Appellant argues that the district court abused its discretion by revoking his probation and erred by refusing to consider at the probation-revocation hearing a dispositional or durational departure from the 144–month adult sentence. Because we conclude that the district court neither abused its discretion nor erred, we affirm.

## FACTS

In September 2001, appellant Steven Bollin, then age 17, was charged with two counts of first-degree criminal sexual conduct for allegedly performing sex acts on two boys, ages three and five. The state moved to certify Bollin to be tried as an adult, but Bollin agreed to plead guilty to one count and to receive a "guidelines sentence" in return for designation as an extended-jurisdiction juvenile (EJJ) and dismissal of the other count.

Before disposition, the district court ordered a psychological evaluation of Bollin. The psychologist stated in her report that Bollin's score on an IQ test placed him in the range of "mild mental retardation." The psychologist also noted that Bollin had

Mike Hatch, Attorney General, St. Paul, MN; and Robert M.A. Johnson, Anoka County Attorney, Marcy S. Crain, Assistant County Attorney, Anoka, MN, for respondent.

been sexually abused, had grown up in a "severely dysfunctional and chaotic family," had been severely abused physically by his family, and was "vulnerable" because of his mental retardation.

At disposition, the district court sentenced Bollin to 144 months in prison, stayed execution of the sentence, and placed Bollin on juvenile probation. The 144-month commitment was the presumptive sentence under the guidelines. Conditions of Bollin's probation included that he remain law-abiding and be placed in a secure, residential sex-offender treatment program.

Soon thereafter, Bollin entered Mesabi Academy to begin sex-offender treatment. There, in October 2002, Bollin engaged in sexual activity with a 13-year-old fellow resident. Bollin was expelled from Mesabi Academy, and the state charged him with one count of fourth-degree criminal sexual conduct and one count of fifth-degree criminal sexual conduct. Bollin eventually pleaded guilty to the charge of fourth-degree criminal sexual conduct.

In a February 2003 probation-revocation proceeding, Bollin's attorney (1) argued that his client's mental retardation was a mitigating circumstance that supported continuing probation and (2) asked the district court to consider a dispositional or durational departure from the 144-month sentence. The district court, after deciding that there were no mitigating circumstances warranting continued probation, concluded that it lacked the authority to consider a dispositional or durational departure in an EJJ probation-revocation proceeding and executed the 144-month sentence. This appeal follows.

## ISSUES

1. Did the district court abuse its discretion by declining to conclude that appellant's mental retardation was a mitigating circumstance that warranted a continuation of appellant's probation?

2. Can a district court consider a durational departure from the sentencing guidelines at an EJJ probation-revocation proceeding?

## ANALYSIS

### I.

■ Bollin challenges the district court's revocation of his probation on the ground that mitigating circumstances, namely his mild mental retardation, warranted continuing him on probation. Whether to revoke probation is within the district court's discretion, and we will reverse a probation revocation only if there is an abuse of that discretion. *State v. Austin*, 295 N.W.2d 246, 249–50 (Minn. 1980).

### A. Austin *factors*

■ Bollin first contends that the district court did not fully address the factors set forth in *State v. Austin* when it revoked his probation. In *State v. B.Y.*, 659 N.W.2d 763, 768–69 (Minn.2003), the supreme court held that a court must consider the *Austin* factors in deciding whether "reasons exist to revoke the stay" of juvenile probation under Minn.Stat. § 260B.130, subd. 5 (2002). *Austin* requires that to revoke probation, a court must "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that the need for confinement outweighs the policies favoring probation." *B.Y.*, 659 N.W.2d at 768 (citing *Austin*, 295 N.W.2d at 250).

In the adult context, we have held that unless a defendant argues at the probation-revocation hearing that the state has failed to present evidence that would satis-

fy the *Austin* factors, we may affirm a probation revocation if the factors are supported by sufficient evidence in the record. *State v. Hlavac,* 540 N.W.2d 551, 552–53 (Minn.App.1995). Bollin did not make that argument at the probation-revocation hearing. Instead, he argued that his mental retardation constituted a mitigating circumstance that justified continuing his probation. *See* Minn.Stat. § 260B.130, subd. 5 (providing that court may continue stay in EJJ proceeding after offender sentenced for certain designated offenses has violated probation only if the court makes written findings that there are mitigating circumstances).

■ The evidence in the record amply supports revocation under the *Austin* factors. The district court explicitly found, and the record shows, that Bollin violated the condition of his probation that required him to remain law-abiding by committing a new sexual offense while in treatment. The court also explicitly found, and the record shows, that that violation was intentional and inexcusable. On the third *Austin* factor, whether the need for confinement outweighs the policies favoring probation, the court stated "there is no alternative but to incarcerate [Bollin]." Although the court did not make an explicit finding addressing the policies favoring probation, it commented at length on the need for confinement in prison after Bollin re-offended while he was on probation and while he was housed in a secure treatment facility. Given the overwhelming evidentiary support for revocation under *Austin,* the district court's failure to make an explicit finding on the third *Austin* factor does not require reversal or remand.

### B. Mental retardation as a mitigating circumstance

■ Bollin argues that the district court abused its discretion by not fully considering Bollin's mental retardation as a mitigating circumstance in deciding whether to revoke his probation. Bollin argued at the revocation hearing, and argues on appeal, that his mild mental retardation is a mitigating circumstance because it makes him vulnerable in prison and prevents him from qualifying for sex-offender treatment in prison. At the hearing, the state argued against treating Bollin's retardation as a mitigating circumstance, claiming that the retardation did not affect his capacity to commit multiple sex crimes. The district court considered these arguments and decided against finding that Bollin's mental retardation was a mitigating factor that warranted a continuation of probation. Furthermore, the supreme court in *B.Y.* stated that in an EJJ probation-revocation hearing, the "relevant mitigating factors are not those circumstances surrounding the original offense, but rather the mitigating factors relating to the probation violation." *B.Y.,* 659 N.W.2d at 769–70. Here, Bollin's mental retardation relates neither to the original offense nor to the probation violation; it relates to Bollin's safety and opportunity for treatment in prison. We conclude, therefore, that the district court did not abuse its discretion by not continuing Bollin's probation because of his mental retardation.

### II.

■ At the hearing in which the district court revoked Bollin's probation, Bollin's attorney asked the court to consider a durational departure from the 144–month commitment to prison or, in the alternative, a dispositional departure. The district court concluded that it lacked the discretion to consider a sentencing departure at an EJJ probation-revocation proceeding. On appeal, Bollin argues that it was error for the court to conclude that it lacked authority to consider a dispositional

departure. This issue presents a question of law, which we review de novo. *See State v. Nerz,* 587 N.W.2d 23, 24–25 (Minn. 1998).

In arguing that the district court has the authority to consider a dispositional departure at an EJJ probation-revocation hearing, Bollin relies on *State v. Fields,* 416 N.W.2d 734 (Minn.1987). In *Fields,* the supreme court held that a district court could consider a defendant's argument, raised in an adult probation-revocation hearing, that the sentencing court had not given "adequate reasons" when it imposed an upward durational departure in sentencing. *Id.* at 735–36. In EJJ proceedings, however, the statute mandates that the initial disposition of the adult sentence is a stay of execution. Minn.Stat. § 260B.130, subd. 4(2) (2002). The district court, therefore, lacks discretion to impose a different disposition. In *Fields,* the district court at the probation-revocation hearing was being asked to reconsider its earlier discretionary decision to impose a durational departure. 416 N.W.2d at 735. But at his probation-revocation hearing, Bollin asked the court to reimpose the same disposition it had earlier imposed, as mandated by statute.

It is apparent that Bollin sought the stayed disposition for purposes of nullifying the court's decision to revoke his stay of execution. No other purpose was served by the request. In *Fields,* the supreme court noted that a defendant sentenced to probation and intending to succeed on probation should not be forced to appeal the duration of his prison sentence or waive that challenge. *Id.* at 736. But no such choice would be forced on Bollin, who had no basis to challenge the mandatory stayed adult sentence when it was imposed. Instead, Bollin is seeking a second opportunity to contest execution of his adult sentence, after the district court has already determined that grounds exist to revoke the stay of execution.

Bollin cites no authority for allowing this second opportunity at litigating the revocation of probation. *Fields,* which allowed a challenge to the sentence duration, an issue unrelated to the probation-revocation decision, provides no such authority.

■ Bollin's primary argument on appeal, however, is that the district court had discretion at the probation-revocation hearing to impose a downward *durational* departure. Bollin also cites *Fields* for this argument. While *Fields* certainly provides more support for a durational-departure argument at the probation revocation than for a dispositional-departure argument, we conclude Bollin's argument is without merit.

The EJJ statute explicitly requires the district court, if it finds reasons to revoke probation, to "order execution of the previously imposed sentence." Minn.Stat. § 260B.130, subd. 5 (2002). This provision by its plain language would appear to prevent the district court from considering a request to modify the "previously imposed sentence." Moreover, *Fields* allows an adult defendant to challenge a durational departure at the probation-revocation hearing. 416 N.W.2d at 736. Bollin received the presumptive sentence, which presents much narrower grounds for challenge than would a sentencing departure. *See State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981) (holding that a presumptive sentence will be reversed only in a "rare case"). And it is not clear that an offender should have an opportunity to argue mitigating circumstances that should have been argued at the disposition hearing when he has violated the conditions of his probation and appears at a probation-revocation hearing. Finally, the district court's comments at Bollin's probation-revocation hearing leave no doubt that, even if the

court concluded it had the authority to grant a durational departure at that stage, it would not have done so.

## DECISION

The district court did not abuse its discretion by revoking Bollin's probation and did not err by refusing to consider a durational departure from the presumptive sentence.

**Affirmed.**