*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1592**

State of Minnesota,
Respondent,

vs.

J.A.H.,
Appellant.

**Filed April 13, 2015
Affirmed
Hudson, Judge
Dissenting, Reyes, Judge**

Hennepin County District Court
File Nos. 27-CR-14-22063, 27-JV-12-413

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Susan Andrews, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and

Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant argues that the district court abused its discretion when, following his

first probation violation, it declined to follow the recommendation of his probation agent

and revoked his extended-juvenile-jurisdiction (EJJ) status, executing his 120-month sentence. Because the district court appropriately weighed the factors in *State v. Austin*, 295 N.W.2d 246, 249–50 (Minn. 1980), including that the need for appellant's confinement outweighed the policies favoring probation, we affirm.

## FACTS

In 2012, appellant J.A.H., then 16 years old, was identified as a person who shot and seriously injured two people in an incident involving Native Mob gang members. The state charged appellant by petition with attempted second-degree felony murder, first-degree assault, and first-degree burglary, all committed for the benefit of a gang— the Native Mob. The district court denied the state's motion for presumptive adult certification and ordered appellant designated as EJJ pursuant to Minn. Stat. § 260B.130 (2010).

In August 2012, appellant pleaded guilty to two amended counts of second-degree assault and one count of first-degree burglary. The district court sentenced appellant to 120 months, stayed on the condition that he successfully comply with EJJ probation, which included standard conditions of probation, completing the Woodland Hills Residential Treatment Program, and having no contact with the victims.

Appellant completed the program at Woodland Hills in Duluth and transitioned to a semi-independent living program. But he returned to the Twin Cities in December 2013, and in February 2014, his probation agent filed an arrest-and-detain report after

appellant failed to maintain contact with his probation agent.[1]  Appellant waived his right to a contested *Morrissey* hearing and admitted that he had remained out of contact with his probation agent for approximately six weeks, tested positive for illegal drugs, had ongoing contact with documented Native Mob gang members, and failed to attend school or make a good-faith effort to obtain employment.  The district court accepted evidence of a disposition review from appellant's probation officer, who recommended commitment for appellant at Minnesota Correctional Facility-Red Wing (MCF-Red Wing).

The district court issued an order revoking EJJ probation and ordering execution of appellant's 120-month adult sentence.  The district court found that appellant had violated the terms of his probation, that the violations were intentional and inexcusable, and that the need for his confinement outweighed the policies favoring continued probation.  The district court found that, although appellant had spent more than 15 months in treatment in Duluth, within weeks after his return to the Twin Cities, he had failed to attend school; failed to maintain contact with his probation agent; used illegal drugs, including marijuana and methamphetamine; and actively affiliated with gangs by taking pictures with known gang members and posting those pictures on social-media sites. The district court found that, based on this immediate departure from his probation terms, treatment at MCF-Red Wing would be inadequate.  The district court also found that appellant had extremely serious original offenses, which implicated public-safety

---

[1] Appellant's probation officer contacted appellant prior to issuing an apprehension-and-detention order, directing appellant to report to the probation office immediately. Appellant did not do so.

concerns and were influenced by gang relations; that his re-association with gang members demonstrated he was a public-safety risk; and that his use of illegal drugs and failure to remain in contact with probation further established that he was unamenable to services in the juvenile system. Appellant moved for reconsideration, which the district court denied, finding that his actions were a choice; that psychological evidence in the EJJ proceeding had identified his association with gang peers as his greatest risk to reoffend; that confinement was necessary to protect the public from further criminal activity; and that it would unduly depreciate the seriousness of the violation if probation were not revoked. This appeal follows.

## DECISION

A district court has broad discretion in determining whether to revoke probation, and this court will not reverse that decision absent a clear abuse of discretion. *State v. Austin*, 295 N.W.2d 246, 249–50 (Minn. 1980). Before revoking probation, however, the district court must perform a three-step analysis: designating the specific probationary conditions that were violated, finding that the violation was intentional or inexcusable, and finding "that [the] need for confinement outweighs the policies favoring probation." *Id*. at 250; *see also State v. B.Y.*, 659 N.W.2d 763, 768–69 (Minn. 2003) (holding that the *Austin* factors apply to EJJ revocation proceedings). The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations, but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity. *Austin*, 295 N.W.2d at 251. The district court's findings on the *Austin* factors must conform to procedural requirements and convey the substantive reasons for

4

revoking probation and the evidence supporting that decision. *State v. Modtland*, 695 N.W.2d 602, 608 (Minn. 2005). "The required *Austin* findings ensure that the district court has fully considered any claims by the defendant that revocation is not warranted because his probation violation was either unintentional or excusable, or because revocation would be inconsistent with the public policies favoring probation." *State v. Cottew*, 746 N.W.2d 632, 637 (Minn. 2008).

Appellant challenges the district court's finding on the third *Austin* factor. When finding that the need for confinement outweighs the policies favoring probation, the district court must find the presence of at least one of three policy subfactors: (1) "confinement is necessary to protect the public from further criminal activity by the offender"; (2) "the offender is in need of correctional treatment which can most effectively be provided if he is confined"; or (3) "it would unduly depreciate the seriousness of the violation if probation were not revoked." *Modtland*, 695 N.W.2d at 607 (quotations omitted). Appellant maintains that he does not need to be confined to protect the public from additional criminal activity because his probation violations displayed only immature behavior; that any need for his confinement to protect the public can be best served by his commitment through the juvenile system, rather than adult prison; and that if probation were not revoked, it would not unduly depreciate the seriousness of his offense because he would still be under confinement at MCF-Red Wing.

Here, the district court found that confinement was necessary to protect the public from appellant's further criminal activity, based on his immediate violation of several

substantive probation conditions after returning to the Twin Cities, including his association with gang members, a previously identified risk factor. *See Austin*, 295 N.W.2d at 251 (noting that probation revocation "requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity" (quotation omitted)). Unlike the minor curfew violations involved in *B.Y.*, 659 N.W.2d at 770–71, cited by the dissent, appellant's probation violations included the use of illegal drugs and association with gang members. Thus, the district court also found that appellant's violations made him unamenable to additional treatment in the juvenile system and that the seriousness of his violation would be depreciated if probation were not revoked. *See Austin*, 295 N.W.2d. at 251 (noting that a failure to make a commitment to rehabilitation supported a reasonable conclusion that treatment had failed). Specifically, the district court noted that the MCF-Red Wing program recommended by appellant's probation officer was not a viable option as it was "another out of home placement with similar treatment goals [and thus] would be unlikely to change [appellant's] conduct." Appellant's failure to heed his probation officer's warning of consequences for failing to maintain contact with probation also illustrates his disinterest in rehabilitation. *See State v. Theel*, 532 N.W.2d 265, 267 (Minn. App. 1995) (holding that failure to heed warnings that a particular behavior violates probation and may trigger consequences indicates that probation is not succeeding and a greater need for confinement exists), *review denied* (Minn. July 20, 1995), *abrogated in part on other grounds by Modtland*, 695 N.W.2d at 606.

The district court's decision to revoke probation reveals it considered appellant's successful completion of his residential treatment program. Indeed, the district court observed that appellant had "accomplished a great deal throughout the time at Woodland Hills and has learned the tools to live a clean and health[y] lifestyle if he chooses." But the district court also considered appellant's inability to commit to continued rehabilitation, as shown by his swift violation of probation conditions within weeks after re-entering the community. In particular, given the gravity of appellant's initial crimes and his continued association with Native Mob gang members, the district court concluded that appellant was a risk to public safety. As evidenced by the district court's willingness to take additional argument on appellant's motion for reconsideration, the district court did not make a reflexive decision to revoke probation, but rather, carefully reviewed appellant's arguments. *See, e.g., State v. Osborne*, 732 N.W.2d 249, 255 (Minn. 2007) (upholding probation-revocation decision when the district court continued a hearing to review the record and issued a thorough explanation for its decision). A close examination of the record shows that it supports the district court's findings on the third *Austin* factor, and the district court did not abuse its discretion in revoking probation.

**Affirmed.**

**REYES**, Judge (dissenting)

I respectfully dissent. The district court's failure to address relevant mitigating factors when they are present in an Extended Juvenile Jurisdiction (EJJ) probation revocation is error under Minnesota Supreme Court precedent. Moreover, the district court abused its discretion in determining that the need to execute a 10-year adult prison sentence on J.A.H. after his first offense outweighs the policies favoring probation. I would reverse.

*Failure to Consider Mitigating Factors*

In determining whether to revoke an EJJ probation and execute a sentence after admitted violations, courts must consider all circumstances of probation, including any mitigating factors relating to the violations. *State v. B.Y.*, 659 N.W.2d 763, 772 (Minn. 2003). Failure to find any mitigating factors when they are present is reversible error. *Id.* at 770. "This is especially true because a mitigation finding, when reduced to writing, can be sufficient to avoid the harsh and inflexible result otherwise required by Minn. Stat. § 260B.130, subd. 5 or [related EJJ rules]." *Id.* at 772. Moreover, "[d]ue process requires that a defendant be given an opportunity to show that even if a condition of probation was violated, mitigating circumstances exist such that the violation does not warrant revocation." *State v. Cottew*, 746 N.W.2d 632, 636 (2008) (citing *Pearson v. State*, 308 Minn. 287, 289–90, 241 N.W.2d 490, 492 (Minn. 1976)) (other citations omitted). "Mitigating factors include amenability to treatment, successful completion of a treatment program, and whether the violations show a potential for recidivism." *State v. J.E.S.*, 763 N.W.2d 64, 69 (Minn. App. 2009) (citing *B.Y.*, 659 N.W.2d at 770).

Here, the district court failed to find any mitigating factors, contrary to the undisputed record containing several mitigating factors. *See B.Y.*, 659 N.W.2d at 772 (stating that "a district court in its mitigation findings must be certain to take all of the circumstances of probation into consideration"). In that case, B.Y. was on EJJ probation after pleading guilty to kidnapping and committing a crime for the benefit of a criminal gang. *Id.* at 764. He had successfully completed the Woodland Hills program, but subsequently violated the terms of his probation. *Id.* at 764-766. B.Y.'s probation officer recommended revoking probation, and the state did as well due to his "multiple violations." *Id.* at 766. The district court revoked probation, "finding no mitigating factors," without additional findings on those factors, and executed his 108-month sentence. *Id.* at 767. B.Y. appealed, and we affirmed, concluding that in the absence of written findings of mitigating factors by the district court, the EJJ statute required the execution of B.Y.'s sentence. *Id.* at 765. The supreme court reversed and remanded for the district court to make additional findings on mitigating factors present in the record. *Id.* at 771.

Similarly here, at the July 29, 2014 hearing, the district court twice stated that the "Court has previously found that there are no mitigating factors."[2] This finding is clearly erroneous based on the record before us. Here J.A.H., just like B.Y., successfully completed the rigorous 16-month residential program at Woodland Hills in Duluth and received positive reports from the very beginning of the program, demonstrating his

---

[2] The district court stated earlier in the hearing that "[J.A.H.] has accomplished a great deal throughout the time at Woodland Hills and has learned the tools to live a clean and healthy lifestyle if he chooses," but apparently did not find this to be a mitigating factor.

amenability to probation. "[S]uccessful completion of the rigorous Woodland Hills rehabilitation program should be appropriately considered by the district court as a mitigating factor demonstrating amenability to probation." *B.Y.* at 770. J.A.H. then successfully transitioned into the semi-independent living program. Moreover, J.A.H. obtained his high school diploma while in the program and even finished a semester of college. And until the present violation, which was his first and only violation, J.A.H. had complied with all of the terms and conditions of his probation. I would conclude that on this record, the district court's failure to address clearly documented mitigating factors amounts to reversible error. *See B.Y.*, 659 N.W.2d. at 770.

*Analysis of the Third Austin Factor*

I would also conclude that the district court abused its discretion in determining that the need for public safety from J.A.H. outweighs the policies favoring probation. Before revoking probation, a district court must make three findings under *State v. Austin*, 295 N.W.2d 246 (Minn. 1980). "[T]he court must (1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that the need for confinement outweighs the policies favoring probation." *State v. Modtland*, 695 N.W.2d 602, 606 (Minn. 2005) (quoting *Austin*, 295 N.W.2d at 250). Only the third *Austin* factor is at issue here. Furthermore, when analyzing the third *Austin* factor, the district court must find at least one of three policy factors: (1) the need for "confinement is necessary to protect the public from further criminal activity by the offender"; (2) "the offender is in need of correctional treatment

which can most effectively be provided if he is confined"; or (3) "it would unduly depreciate the seriousness of the violation if probation were not revoked." *Id.* at 607.

The supreme court has stated that "[w]hen determining if revocation is appropriate, courts must balance 'the probationer's interest in freedom and the state's interest in insuring his rehabilitation and the public safety'. . . ." *Id.* at 606-607 (citing *Austin*, 295 N.W.2d at 250). But even when probation terms are violated, "policy considerations may require that probation not be revoked." *Austin*, 295 N.W.2d at 250. Indeed, "revocation should be used only as a last resort when treatment has failed." *Id.* "If the violation is one of youthful obstinance, it may not always foreclose a determination that an EJJ defendant is amenable to probation." *B.Y.*, 659 N.W.2d at 772.

In its June 3, 2014 order and again during the July 29, 2014 hearing, the district court relied on the first policy factor—that "confinement is necessary to protect the public from further criminal activity"—to support its finding on the third *Austin* factor. At the July 29, 2014 hearing, the district court also found "that it would unduly depreciate the seriousness of the violation if the probation was not revoked." However, the district court did not provide any substantive reasons for this finding. *See Modtland*, 695 N.W.2d at 608 ("courts must seek to convey their substantive reasons for revocation and the evidence relied upon"). Because the district court primarily relied on the confinement policy with substantive reasoning but did not do so for the third policy factor, I address the confinement policy. *Id.*

The district court's finding on the third *Austin* factor, that the need for confinement outweighed the policies favoring probation, is an abuse of discretion for

three reasons. First, there is a viable alternative to execution of his 120-month sentence with the MCF-Red Wing program recommended by J.A.H.'s probation officer.[3] This program would provide treatment while keeping him confined, thereby addressing the concern for confinement to protect the public expressed by the district court. At the same time, that placement would encourage rehabilitation, which has been recognized as "the purpose of probation". *Modtland*, 695 N.W.2d at 606 (quotation omitted).

Second, J.A.H. has shown that he is amenable to probation and rehabilitation. As stated above, he successfully completed a 16-month residential program, transitioned into a semi-independent living program, obtained his high school diploma, completed a semester of college and until the violation otherwise complied with the terms of probation. *See B.Y.*, 659 N.W.2d at 770 (stating that "successful completion of the rigorous Woodland Hills rehabilitation program . . . demonstrate[ed] amenability to probation"). The MCF-Red Wing program would provide J.A.H. the skills and individual therapy necessary to assist him in avoiding association with gang members. And since he obtained his high school diploma while in the Woodland Hills program, he would be eligible to continue his post-secondary education or vocational training at the MCF-Red Wing program.

---

[3] In contrast to the probation officer's recommendation in the instant case, in *Modtland* the probation officer recommended incarceration, stating that he was a "huge risk to public safety," not amenable to the Minnesota Teen Challenge program, and that the only alternative was execution of his sentence. 695 N.W.2d at 605. The supreme court nevertheless reversed and remanded for failing to address the second and third *Austin* factors. *Id.* at 608.

Third, while J.A.H's underlying convictions were for unquestionably serious crimes (second-degree assault and first-degree burglary), his probation violations were unrelated to those underlying crimes. Nevertheless, the district placed great weight on J.A.H. violating the terms of his probation by having contact with gang members, noting that he posted photographs on Facebook of himself wearing gang colors and flashing gang signs. While these were admitted violations of probation, postings on Facebook appear to reflect "youthful obstinance" and do not necessarily foreclose the possibility that he is amenable to probation. *Id.* at 772.

I recognize the challenge district courts face when having to make decisions on EJJ revocation hearings by balancing public safety concerns with the desire for rehabilitation. Although we afford district courts great deference, as an error-correcting court we must reverse when errors occur. Failure to find mitigating factors when such exist is reversible error. Moreover, the supreme court has consistently emphasized the strong preference for rehabilitation and using revocation as a last resort only when treatment has failed. *See Modtland*, 695 N.W.2d at 606 (quoting *Austin*, 295 N.W.2d at 250). I would reverse.