*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1638**

In the Matter of the Welfare of: B. T. B., Child.

**Filed August 15, 2016
Affirmed
Johnson, Judge**

Crow Wing County District Court
File No. 18-JV-12-1369

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant B.T.B.)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Anne Marie Soberg, Assistant County Attorney, Brainerd, Minnesota (for respondent State)

Considered and decided by Stauber, Presiding Judge; Ross, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A juvenile appeals from a delinquency disposition order that placed him at the Minnesota Correctional Facility in Red Wing. He argues that the district court erred by not ordering a less-restrictive disposition such as a supervised foster home. We affirm.

**FACTS**

In September 2011, B.T.B., then a twelve-year-old boy, sexually assaulted his six-year-old half-brother. In March 2012, the state filed a juvenile-delinquency petition in the Crow Wing County district court, charging B.T.B. with fifth-degree criminal sexual conduct, in violation of Minn. Stat. § 609.3451, subd. 1(1) (2010). In September 2012, he admitted the allegations in the petition. In November 2012, the district court adjudicated him delinquent and placed him on probation for an indefinite period of time.

During the investigation of the sexual assault, B.T.B. engaged in increasingly aggressive behavior. In one incident, he threatened to kill his babysitter. Following that incident, he received in-patient mental-health treatment for ten days. Two weeks later, he was placed at Mille Lacs Academy in Onamia, a nonsecure, in-patient, sex-offender treatment program with an on-site school. B.T.B. resided at Mille Lacs Academy for approximately one year before he was removed because of poor behavior. In January 2013, B.T.B. was placed at Village Ranch in Cokato, a residential treatment program. He resided there until May 2014, when his probation agent filed a probation-violation report, alleging that he assaulted a Village Ranch staff member. B.T.B. admitted the violation. The district court reinstated B.T.B. on probation indefinitely.

Because Village Ranch had terminated B.T.B.'s participation in its program, the district court placed B.T.B. in the Anoka County Juvenile Center 90/120 program, a secure correctional program. Because that program is time-limited, B.T.B. left the program in September 2014 and began residing at Pinehaven House in Baxter, a less-restrictive group-home program. In early December 2014, B.T.B. was removed from Pinehaven House after

exposing himself to another resident, and he was formally discharged from the program because of concerns about his behavior, which included accessing pornography, inappropriate sexual talk with peers, and touching a dog in a sexual manner. After his probation agent filed another probation-violation report, the district court ordered that B.T.B. be placed at the Northwest Juvenile Detention Center in Bemidji, a secure facility, pending probation-revocation proceedings. B.T.B. admitted the probation violation, and the district court reinstated him on probation and ordered that he be placed at the Hennepin County Home School in Minnetonka, an in-patient sex-offender program.

In February 2015, one month after arriving at the Hennepin County Home School, B.T.B. was removed from the program because of his intimidating, inappropriate, and abusive behavior. His probation agent filed another probation-violation report, and B.T.B. admitted the probation violation. The district court again placed B.T.B. at the Northwest Juvenile Detention Center pending probation-revocation proceedings. In March 2015, the district court ordered that B.T.B.'s probation agent could move him to a residential facility without court intervention if B.T.B., his attorney, and his mother agreed. But the parties were unable to find a facility that would accept him. Thus, B.T.B. remained at the Northwest Juvenile Detention Center.

In August 2015, the district court conducted a disposition hearing on the admitted probation violations from December 2014 and February 2015. The state called one witness, the probation agent, who testified about B.T.B.'s history of placements in various settings and the reasons why he was moved from placement to placement. She recommended that B.T.B. be placed at the Minnesota Correctional Facility in Red Wing

(MCF-Red Wing) because it has an in-patient sex-offender program, psychologists, a psychiatrist, and a cognitive-behavioral-restructuring component, which she testified was necessary due to B.T.B.'s history of anti-social behavior. She also testified that she had contacted ten other programs at seven different facilities and that none of them would accept B.T.B. due to concerns about the risk he poses to other residents and the extent of his needs. She further testified that MCF-Red Wing is the least-restrictive placement option available to B.T.B.

B.T.B. called two witnesses and testified on his own behalf. The guardian *ad litem* testified that B.T.B. should be placed in a less-restrictive, foster-care setting closer to his mother because he had matured. The guardian *ad litem* also testified, however, that he had been unable to find a foster home that was willing and available to take B.T.B. at that time. B.T.B.'s mother testified that B.T.B. should be placed in a foster-care setting where he would be the only child and would have consistent support and structure. B.T.B. testified that he had changed in the preceding six months since being removed from the Hennepin County Home School. He stated his belief that he should be placed in a foster-care setting. He also apologized for not being successful in previous programs and promised to make the next placement work. B.T.B.'s attorney requested that the district court stay placement at MCF-Red Wing and instead place B.T.B. in a foster home.

In September 2015, the district court issued a 16-page order directing that B.T.B. be placed at MCF-Red Wing. The district court order described B.T.B.'s history of placements in detail. The district court found that foster care would not meet B.T.B.'s needs for supervision and structure and that he is not ready for a less-restrictive placement.

4

The district court credited the testimony of the probation agent, who testified that B.T.B. previously had been discharged from a less-restrictive facility, Pinehaven House, after saying that he had adopted a different mindset. The district court concluded as follows:

> The Court finds that placement of [B.T.B.] at the Minnesota Correctional Facility in Red Wing, is necessary to serve public safety, that it is necessary to restore [B.T.B.] to law-abiding conduct, and that it is proportional, for reasons which include: After committing the serious criminal sexual conduct crime in 2011 and after he had other escalating behaviors which led to his first initial placement at Mille Lacs Academy in the Fall of 2011, none of the facilities he was placed at pending these proceedings were able to handle his behaviors and keep him in control; he has consistently refused to participate meaningfully in available programming; his behaviors in facilities have hindered other participants' progress and have at times also placed other participants at risk; he needs intense supervision, structure, and mental health treatment to get his behavior under control so that he can complete sex offender treatment and other necessary programming; and placement at Red Wing is the least restrictive placement that can provide the accountability and services that [B.T.B.] needs.

B.T.B. appeals.

## DECISION

B.T.B. argues that the district court erred by placing him at MCF-Red Wing instead of a supervised foster home. More specifically, B.T.B. argues that the district court "did not make adequate factual findings." B.T.B.'s primary contention is that the district court did not make a finding as to why placement at MCF-Red Wing is necessary instead of a less-restrictive placement in a foster-care setting.

A delinquency disposition is lawful only if it is necessary to the rehabilitation of a child. Minn. Stat. § 260B.198, subd. 1 (2014). An order for disposition must contain written findings of fact that demonstrate:

> (1) why public safety and the best interests of the child are served by the disposition ordered;
>
> (2) what alternative dispositions were recommended to the court and why such recommendations were not ordered; and
>
> (3) if the disposition changes the place of custody of the child:
>
> > (a) the reasons why public safety and the best interest of the child are not served by preserving the child's present custody; and
> >
> > (b) suitability of the placement, taking into account the program of the placement facility and assessment of the child's actual needs.

Minn. R. Juv. Delinq. P. 15.05, subd. 2(A); *see also* Minn. R. Juv. Delinq. P. 15.07, subd. 4(D) (stating that when child admits violation of dispositional order, district court must order new dispositional order that complies with rule 15.05, subdivisions 2 and 3).

In addition, a district court must consider five other factors: (1) the necessity of the disposition in restoring law-abiding conduct in terms of the risk to public safety, the culpability of the child, the child's record of delinquency, the child's programming history, and proportionality (*i.e.,* "the least restrictive action consistent with the child's circumstances"); (2) the best interests of the child; (3) the needs of the child if placement is out of the home; (4) the appropriateness of sanctions, such as placement in secure

6

facilities, if necessary to promote public safety and meet the needs of the child; and (5) local dispositional criteria. Minn. R. Juv. Delinq. P. 15.05, subd. 2(B).

Furthermore, to place a child at MCF-Red Wing, a district court must find that the county has "considered all appropriate local or regional placements and [has] exhausted potential in-state placements in the geographic region" and that the juvenile satisfies the admissions criteria of the facility. Minn. Stat. § 260B.199, subd. 1 (2014). This court applies an abuse-of-discretion standard of review to a district court's dispositional order. *In re Welfare of J.S.H.-G.*, 645 N.W.2d 500, 504 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002).

In this case, the district court found that a foster home would not adequately provide for B.T.B.'s needs for adequate supervision and structure and that MCF-Red Wing would meet those needs. The district court elaborated by making the following findings of fact:

> The Court finds . . . that [B.T.B.] needs sex offender treatment; that he is a poor candidate for an unsecured residential sex offender treatment program; and, that he is in need of a more secure and structured setting with a strong mental health component that can provide him more individualized attention and address his mental health needs.

The district court expressly considered possible alternative placements by making the following findings of fact:

> The Court finds that [B.T.B.'s] probation agent . . . has considered every reasonable alternative local or regional placement before making her recommendation that [B.T.B.] be placed at the Minnesota Correctional Facility in Red Wing, Minnesota. All other potential in-state placements in the geographical region have been exhausted. [The agent] made every reasonable effort to make inquiries to other facilities that might be able to keep [B.T.B.] in custody/control and meet his

7

needs, and all of such facilities have rejected [B.T.B.] for placement.

The district court's extensive findings are supported by the record. The probation agent testified about B.T.B.'s previous failures to succeed at another less-restrictive environment by choking another resident, stealing other residents' belongings, accessing pornography, touching a dog in a sexual manner, and engaging in other inappropriate, disrespectful, and threatening behaviors. The probation agent also testified that MCF-Red Wing meets B.T.B.'s needs because it offers sex-offender programming, a mental-health component, cognitive-skills programming, effective consequences for poor behaviors, and adequate staff to provide individualized attention. The probation agent further testified that she had contacted ten programs at seven facilities and that all had refused to accept B.T.B. due to concerns that he would present a safety risk to other patients or that the programs could not address his various needs for sex-offender treatment, supervision, and structure.

B.T.B. also argues that the district court erred by finding that he had not changed his attitude and that he was responsible for his actions. The district court expressly considered B.T.B.'s testimony that he had changed and his promise that he would be successful in foster care. But the district court found that B.T.B.'s testimony was less credible than that of his probation agent, who testified that B.T.B. earlier had "talked about being in a different mindset" but had behaved to the contrary. B.T.B.'s argument is unpersuasive because we must defer to the credibility determinations of the district court,

which is in the best position to make credibility determinations. *See State v. B.Y.*, 659 N.W.2d 763, 771 (Minn. 2003).

B.T.B. argues in closing that "the district court's order was nothing more than the reflexive response to an accumulation of violations." We disagree with that characterization of the district court's order, which reflects careful consideration of B.T.B.'s history and needs.

In sum, the district court did not err by ordering that B.T.B. be placed at MCF-Red Wing.

**Affirmed.**