In the Matter of the WELFARE OF B.N.S., Child.

No. C2–01–1665.

Court of Appeals of Minnesota.

July 9, 2002.

John M. Stuart, Minnesota Public Defender, Charlann E. Winking, Assistant Public Defender, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Terry Viesselman, Martin County Attorney, Michael D. Trushenski, Assistant County Attorney, Fairmont, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge, STONEBURNER, Judge, and HUSPENI, Judge.*

## OPINION

STONEBURNER, Judge.

Appellant B.N.S. contends that the district court erred as a matter of law by

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

designating the prosecution against him an extended jurisdiction juvenile (EJJ) prosecution because respondent Martin County failed to prove by clear and convincing evidence that an EJJ designation would serve public safety. Because the record does not establish by clear and convincing evidence that an EJJ designation would serve the public safety in this case, we reverse.

## FACTS

The Minnesota License Bureau in Fairmont was burglarized on or about April 9 or 10, 2000, resulting in property damage to a door and a safe in the amount of $357.44, theft of $2000 in cash, and theft of some checks. Appellant became a suspect in a separate burglary leading to a search of his home and his car pursuant to a warrant. During the searches, police found a pry-bar tool that appeared to match the tool marks on the safe at the license bureau. They also found an oxygen cylinder, valued at $92.91, that had been stolen from Moore Medical Services; a Nokia cellular telephone that had been stolen from the registered owner's daughter; nine containers of hair care products that had been taken during a burglary at the Main Image Hair Salon in Fairmont; and seven credit cards that had been stolen from the church of St. John Vianney.

The pry-bar tool and the safe that had been broken into at the license bureau were sent to the Bureau of Criminal Apprehension. On December 15, 2000, the BCA reported that the pry bar tool found in appellant's room was the tool used to pry open the safe at the license bureau.

On dates not disclosed in the record, appellant pled guilty to a number of property crimes he committed around the same time as the license bureau incident and was committed to the Red Wing Correctional Facility on December 26, 2000, for those offenses. Appellant successfully completed the Red Wing program and returned to the community on May 29, 2001, under continued supervision by a corrections agent.

On April 20, 2001, as a result of the license bureau burglary, respondent filed a juvenile-delinquency petition in juvenile court alleging that appellant is a juvenile delinquent by reason of committing burglary in the third degree, a felony, in violation of Minn.Stat. § 609.582, subd. 3; felony theft, in violation of Minn.Stat. § 609.52, subds. 2(1), 3(3)(a); criminal damage to property in the third degree, a gross misdemeanor, in violation of Minn. Stat. § 609.595, subd. 2(a); and possession of stolen property, a felony, in violation of Minn.Stat. §§. 609.53, subd. 1 and 609.52, subd. 3(3)(a). The county attorney requested the district court to designate the four counts in the petition as EJJ proceedings.

An EJJ study was prepared by a corrections agent who recommended EJJ designation to "provide [appellant] with a greater opportunity at rehabilitation by extending * * * jurisdiction until [appellant's] twenty-first birthday." The public defender's dispositional advisor submitted a report recommending against EJJ designation, citing appellant's recent completion of the program at the Red Wing Correctional facility,[1] cooperation with community services since release, and the consensus of all of the professionals recently or currently involved with appellant that probation appeared to be a valid

---

1. Apparently neither appellant nor respondent contemplated additional charges when appellant entered the guilty pleas that resulted in the Red Wing placement. Restitution for the license bureau's loss appears to be the only additional consequence that would have resulted had the current charges been included in the earlier plea agreements.

option and preferable to placement in a residential or correctional setting. The dispositional report asserted that the victim (license bureau) seeks only restitution and no additional punishment for appellant's involvement in the burglary. At the August 28, 2001 hearing on respondent's request for EJJ designation, both parties relied on their respective studies and neither presented additional evidence. The district court ordered the matter to proceed as an EJJ prosecution based on its conclusion that no further programming was available to appellant in the juvenile system because he was within four months of his nineteenth birthday. This appeal followed.

## ISSUE

Is designation of the proceeding against appellant as an EJJ prosecution error where there is no finding by the district court and no clear and convincing evidence on the record that public safety is served by EJJ designation?

## ANALYSIS

■ An appellate court reviews a district court's designation of a proceeding as an EJJ prosecution under a clearly erroneous standard. *In re Welfare of D.M.D.*, 607 N.W.2d 432, 437 (Minn.2000).

■ The juvenile court has original and exclusive jurisdiction over a child who is alleged to have committed a criminal offense before the age of eighteen. Minn. Stat. § 260B.101, subd. 1 (2000). An EJJ prosecution is a blending of juvenile and adult criminal dispositions that extends jurisdiction over a young person to age twenty-one and permits the court to impose both a juvenile disposition and a criminal sentence. *See* Minn.Stat. § 260B.130, subd. 4 (2000). Execution of the adult sentence is stayed so long as the offender does not violate the provisions of the juvenile disposition and does not commit a new offense. *Id.*

EJJ designation can occur in three ways. First, the district court can designate an EJJ prosecution as a result of a certification hearing for a child who was 14 to 17 years old at the time of the alleged offense. Minn.Stat. § 260B.130, subd. 1(1) (2000). Second, the prosecutor can designate an EJJ prosecution without a hearing if a child was 16 or 17 at the time of an alleged offense for which the sentencing guidelines and applicable statutes presume a commitment to prison, or the offense was a felony and the child allegedly used a firearm. Minn.Stat. § 260B.130, subd. 1(2) (2000). Third, the child was 14 to 17 at the time of the alleged offense, the prosecutor requests EJJ designation, and the court so designates, after a hearing. Minn.Stat. § 260B.130, subd. 1(3) (2000). Here the prosecutor requested the designation pursuant to Minn.Stat. § 260B.130, subd. 1(3).

> When a prosecutor requests that a proceeding be designated an [EJJ] prosecution, the court shall hold a hearing * * * to consider the request. * * * If the prosecutor shows by clear and convincing evidence that designating the proceeding an [EJJ] prosecution serves public safety, the court shall grant the request for designation. In determining whether public safety is served, the court shall consider the factors specified in section 260B.125, subdivision 4.

Minn.Stat. § 260B.130, subd. 2 (2000).

The factors the district court is required to consider in determining whether public safety is served are:

(1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the sentenc-

ing guidelines, the use of a firearm, and the impact on any victim;

(2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the sentencing guidelines;

(3) the child's prior record of delinquency;

(4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;

(5) the adequacy of the punishment or programming available in the juvenile justice system; and

(6) the dispositional options available for the child.

In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors listed in this subdivision.

Minn.Stat. § 260B.125, subd. 4 (2000).

The EJJ study, dated July 18, 2001, noted that appellant earned his GED at Red Wing, was working full time, was participating in counseling, was taking prescribed medications, and was complying with the requirement that he attend AA twice a week and provide his correction's agent with verification of attendance. Addressing the public safety factors, the study notes that (1) there are no aggravating factors regarding the alleged offenses; (2) appellant admitted his culpability; (3) appellant was on probation for three offenses at the time of the study, had committed two burglaries and a gross misdemeanor theft in the fall of 1997, and had committed tobacco and alcohol violations, a curfew violation, and a no-bicycle-license violation; (4) appellant "has not participated meaningfully in any of his former place-

ments;" (5) appellant would not qualify for the majority of treatment and consequential juvenile placements due to the nature of his offense, his age, mental health issues, and resistance to treatment.

Despite consideration of the appropriate factors, the study does not relate any of the factors to public safety. The summary states that appellant

has an extensive history of chemical dependency and burglaries * * * [He] is unwilling to address his issues. * * * Without properly addressing these matters [appellant] will likely continue to be involved with the criminal system. * * * Red Wing appeared to minimally address [appellant's] issues due to their lack of mental health resources.

The study recommends EJJ designation to provide "a greater opportunity at rehabilitation" by extending jurisdiction to appellant's twenty-first birthday, but the study notes the lack of facilities to address appellant's problems and does not recommend any programs or rehabilitation not being pursued by appellant at the time of the study.

 At the hearing, the parties agreed that appellant has never committed a crime of violence. Respondent described appellant as a chronic offender, not a violent offender. The district court expressed some concern that the current charges had not been made part of the procedure that resulted in appellant's commitment to Red Wing. On the record, the district court noted that there was no further programming available in the juvenile system for appellant but supported extending jurisdiction to provide further rehabilitative services. In its written order, the district court found that (1) appellant was seventeen at the time he allegedly committed the offenses alleged, three of which are felonies; (2) appellant has "a history of

committing delinquent offenses, including a number of felonies;" and (3) appellant had been previously detained at the Red Wing Correctional Facility. The district court failed to address at the hearing or in its written order whether there is clear and convincing evidence that public safety will be served by the EJJ designation. The record does not contain any evidence that appellant poses a danger to public safety other than the speculation in the EJJ study that appellant will continue to be involved with the criminal system if he fails to address his "issues." The record does not support a finding that the prosecutor has established by clear and convincing evidence that EJJ designation will serve public safety; therefore the EJJ designation is clear error.

Because appellant is nineteen years old, the juvenile court no longer has jurisdiction to impose a disposition absent EJJ designation, but the district court retains jurisdiction to conduct a trial or receive a plea. *See* Minn.Stat. § 260B.193, subd. 5 (c)(2) (2000) (permitting jurisdiction to hold a trial or receive a plea in a juvenile prosecution if the adult committed the offense prior to the adult's 18th birthday). *In re the Welfare of B.J.M.*, 636 N.W.2d 155, 157 (Minn.App.2001)

## DECISION

Designating the proceeding against appellant an EJJ prosecution, without clear and convincing evidence that an EJJ designation serves the public safety as required by Minn.Stat. §§ 260B.130, subd. 2 and 260B.125, subd. 4 (2000), was clear error. We reverse and remand to the district court for trial or, if appellant elects to plead guilty, to receive the plea pursuant to Minn.Stat. § 260B.193, subd. 5(c)(2).

**Reversed and remanded.**