Randy ERICKSON, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. A04–2082.

Court of Appeals of Minnesota.

Sept. 6, 2005.

Robert D. Miller, Stephen V. Grigsby, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, James B. Early, Office of the Attorney General, St. Paul, MN; and Michelle Elise Moren, Roseau County Attorney's Office, Roseau, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; WILLIS, Judge; and FORSBERG, Judge.*

## OPINION

TOUSSAINT, Chief Judge.

Appellant Randy Erickson challenges an order denying his postconviction petition contesting his 2003 probation revocation. Appellant argues that the district court abused its discretion when it failed to make the *Austin* findings and failed to consider treatment as an alternative to revoking his probation. Additionally, appellant argues that he received ineffective assistance of counsel at his revocation hearing because of a conflict of interest in representation. Because he was abusing

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

alcohol and antidepressants at the time, appellant also contends that his guilty plea was not knowing or intelligent.

## FACTS

Officers from the Roseau County Sheriff's Department stopped at appellant's residence on September 9, 2001. The purpose of their stop was to determine if appellant was complying with the conditions of his release on a pending controlled-substance charge. The officers observed beer cans and a container similar to one previously retrieved from a dismantled methamphetamine lab in the back of a truck parked in appellant's driveway.

Appellant invited the officers to speak with him in his garage. While speaking with appellant, the officers observed empty cold-tablet containers, Coleman fuel, coffee filters and strainers, and crumpled aluminum foil lying around the garage. Additionally, the officers observed a "yellowish discoloration" on the concrete floor of the garage that was similar to the discoloration produced by the earlier-seized methamphetamine lab.

The officers informed appellant that a number of the items in his garage were similar to items seized from a suspected methamphetamine lab near a neighbor's residence. Appellant initially indicated that he allowed some of the employees of Stoskopf Redi–Mix to use his shop and they could have made methamphetamines. Officers also informed appellant of the recent thefts of anhydrous ammonia in the area. Appellant checked his propane cylinders and found one that had contained anhydrous ammonia, but indicated that he did not know how the ammonia got into the cylinder.

Because the officers were suspicious that methamphetamine was being manufactured at appellant's residence, they asked appellant for permission to search his property. Appellant consented to the search, and the officers seized a number of items commonly used to manufacture methamphetamine.

The officers asked appellant to go to the law-enforcement center and provide a urine sample for testing. Random testing was a condition of his earlier release from Sherburne County. Appellant agreed and provided a urine sample, which tested positive for methamphetamine.

Appellant was read his *Miranda* rights and agreed to speak with an officer. Appellant eventually admitted that he had stolen anhydrous ammonia on September 7, 2001. Appellant admitted that, in an attempt to manufacture methamphetamine, he crushed up 100–200 pills in a bowl and added Coleman fuel, anhydrous ammonia, and sulfuric acid. Appellant also admitted that, in a separate attempt to create methamphetamines, he crushed up some pills, mixed them with white gas, and then evaporated the gas from the mixture.

On February 15, 2002, appellant pleaded guilty to one count of controlled-substance crime in the first-degree, one count of controlled-substance crime in the fourth degree, and one count of gross-misdemeanor driving while intoxicated (DWI). In accordance with a plea agreement, appellant received a 110–month sentence, which was stayed for a probationary period of 15 years. The district court informed appellant that if he violated his probation he could be sent to jail.

In January 2003, appellant was arrested because the officer believed appellant had violated his probation by consuming alcohol. Later, a case of beer was recovered from his vehicle. Upon arriving at the Roseau County Sheriff's Office, appellant was given a PBT, which produced a reading of .08.

At appellant's revocation hearing in February 2003, appellant admitted to violating his probation by consuming alcohol. On February 26, 2003, the district court revoked appellant's probation and executed his sentences for the controlled-substance convictions—110 months for the controlled-substance crime in the first degree and a concurrent sentence of 21 months for the controlled-substance crime in the fourth degree.

On August 20, 2004, appellant filed a petition for postconviction relief. Appellant argued that the district court failed to make the *Austin* findings required to revoke his probation. The district court denied appellant's petition for postconviction relief on September 1, 2004. This appeal follows.

## ISSUES

I. Appellant challenges the denial of his petition for postconviction relief, alleging that the district court erred when it revoked his probation. Did sufficient evidence exist to support the district court's decision to revoke appellant's probation?

II. In appellant's pro se supplemental brief, he claims that the attorney representing him at his revocation hearing also represented an individual he previously testified against. Did a conflict of interest create an ineffective-assistance-of-counsel issue for appellant?

III. Appellant claims that when he entered his original guilty plea he was under the influence of antidepressants and alcohol. Was his guilty plea voluntary?

## ANALYSIS

### I.

*Postconviction Relief*

Appellate courts "review a postconviction court's findings to determine whether there is sufficient evidentiary support in the record." *Dukes v. State,* 621 N.W.2d 246, 251 (Minn.2001) (citation omitted). Appellate courts "afford great deference to a district court's findings of fact and will not reverse the findings unless they are clearly erroneous." *Id.* "The decisions of a postconviction court will not be disturbed unless the court abused its discretion." *Id.*

Appellant argues that the district court erred when it denied appellant's petition for postconviction relief because the revocation of appellant's probation was improper. Specifically, appellant claims that the district court erred in revoking his probation by (1) failing to make written findings on the *Austin* factors, based on a the record that is inadequate to support the revocation; and (2) failing to consider treatment as an option before revoking his probation.

*Austin Findings*

 The district court "has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Austin,* 295 N.W.2d 246, 249–50 (Minn.1980). The district court must engage in a three-step analysis before probation can be revoked: (1) designate the specific condition that was violated; (2) find that the violation was intentional or inexcusable; and (3) find that the need for confinement outweighs the policies favoring probation. *Id.* The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity. *Id.* at 251.

### a. Impact of State v. Modtland

In the past, appellate courts have applied a "sufficient evidence exception" to

the requirement that district courts make findings in support of the *Austin* factors. *See State v. Theel*, 532 N.W.2d 265, 267 (Minn.App.1995) (stating that the district court's failure to make the express findings on the *Austin* factors is not an abuse of discretion when the record contains sufficient evidence to warrant the revocation), *review denied* (Minn. July 10, 1995); *State v. Hamilton*, 646 N.W.2d 915, 918 (Minn. App.2002) (the lack of explicit findings is not an abuse of discretion when the decision to revoke probation is supported by ample evidence in the record). However, the Minnesota Supreme Court recently determined that the "sufficient evidence" exception previously recognized by this court cannot "be reconciled with the language of *Austin* itself." *State v. Modtland*, 695 N.W.2d 602, 606 (Minn.2005). The supreme court specified that it is not the defendant's burden to request that the district court make specific findings on each of the *Austin* factors and reaffirmed the essential holding of *Austin*, requiring that the district court make the three findings on the record before probation may be revoked. *Id.* In this case, the district court failed to provide *Austin* findings on the record. Because *Modtland* was not released at the time appellant's probation was revoked, the initial determination must be whether *Modtland* applies retroactively. If *Modtland* applies, appellant's probation revocation would be in error.

■ Whether or not a decision applies retroactively is a question appellate courts review de novo. *O'Meara v. State*, 679 N.W.2d 334, 338 (Minn.2004). Generally, new rules of law are not retroactively applicable to cases on collateral review. *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). However, two exceptions to this general rule exist. *Id.* at 311, 109 S.Ct. at 1075–76. The first exception is for rules placing "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.*, 109 S.Ct. at 1075 (quotation omitted). The second exception allows a rule to be applied retroactively if it "requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty.'" *Id.*, 109 S.Ct. at 1076 (quotation omitted).

■ Under *Teague*, a district court's decision articulates "a 'new rule of law' when the decision was not dictated by precedent existing at the time the defendant's conviction became final." *O'Meara*, 679 N.W.2d at 339. Existing precedent at the time of appellant's probation revocation included a sufficient-evidence exception to the *Austin* factors. In fact, this court has utilized the sufficient-evidence exception when reviewing probation-revocation decisions for at least 16 years. *See State v. Wittenberg*, 441 N.W.2d 519, 521 (Minn.App.1989) (relying on sufficient-evidence exception to affirm probation revocation). In *Modtland*, the supreme court overruled the previous interpretations of *State v. Austin* and held that the district court must make findings on all of the *Austin* factors on the record. *Modtland*, 695 N.W.2d at 606. Thus, *Modtland* created a new rule of law. The next question is whether the new rule fits into either of the two exceptions that would make it apply retroactively.

■■ The first exception allows for retroactive application of a new rule that places particular private conduct beyond the scope of lawmakers to proscribe. *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075. The rule created in *Modtland*, that district courts must place the *Austin* factors on the record before revoking a defendant's probation, does not proscribe any private conduct, and thus does not fall into the first exception.

■ The second exception allows for retroactive application of a new rule that requires the observance of procedures that implicate the fundamental fairness of a trial and that are implicit in the concept of ordered liberty. *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075 (citation and quotation omitted). An example of a rule that would alter the *"bedrock procedural elements"* is the requirement that counsel is now a necessary condition to any conviction for a serious crime. *Id.*, 109 S.Ct. at 1076. While *Modtland* creates a specific requirement for the district courts, it does not prescribe procedures that implicate the fundamental fairness of a trial. The *Modtland* rule merely requires the district court to place the *Austin* findings on the record. *Modtland*, 695 N.W.2d at 606. The rule does not change the discretion allowed to the district court in weighing the factors and making the decision to revoke or continue the defendant's probation. Therefore, the rule created in *Modtland* does not fit into the second exception and should not be applied retroactively.

■ In this case, appellant is challenging a denial of his petition for postconviction relief. A petition for postconviction relief is a collateral attack. *Pederson v. State*, 649 N.W.2d 161, 163 (Minn.2002). And, generally, new rules of law are not retroactively applicable to cases on collateral review. *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075. Because this is a collateral attack on a conviction, and because the rule created in *Modtland* does not fall within either of the exceptions allowing retroactive application, *Modtland* does not apply to appellant's case. Therefore, when determining whether appellant's probation revocation was an error, we use the law that was in place at the time, which included the sufficient-evidence exception.

### b. *Austin factors*

Appellant claims not only that the district court failed to make *Austin* findings but that it failed to appropriately exercise its discretion when deciding to revoke. When appellant's probation was revoked, controlling precedent held that if the district court failed to make the *Austin* findings, the reviewing court "may nevertheless affirm the [district] court's revocation of the stayed sentence, provided that there is sufficient evidence in the record to support the necessary findings." *State v. Balma*, 549 N.W.2d 102, 105 (Minn.App.1996).

■ Here, the district court's failure to make the *Austin* findings on the record does not facilitate effective appellate review. It is unclear what information the district court relied on when making the decision to revoke appellant's probation. Therefore, we reverse and remand to the district court to make the necessary findings in support of revocation of appellant's probation.

### Consideration of Treatment

Appellant also argues that the district court erred when it failed to consider treatment as an option before revoking his probation. Based on our determination above, we need not address this argument.

### II.

### Conflict of Interest

Appellant asserts in his pro se supplemental brief that the attorney representing him at his probation-revocation hearing had a conflict of interest and, thus, he was denied his Sixth Amendment right to conflict free representation. Essentially, appellant is making an ineffective-assistance-of-counsel claim on postconviction review. A postconviction petitioner who claims ineffective assistance of counsel must allege facts that would affirmatively prove that

counsel committed unprofessional errors and that, but for those errors, there is a reasonable probability the result would have been different. *Fratzke v. State,* 450 N.W.2d 101, 102 (Minn.1990).

Appellant argues that the attorney representing him at his probation-revocation hearing had a conflict of interest because she also represented one of the individuals appellant had previously testified against. However, appellant fails to show how that fact, even if true, affected the outcome of his hearing. In fact, appellant admitted to violating his probation, and evidence was presented of this violation. It is unclear how his counsel's previous representation could have had any influence on appellant's situation. Therefore, appellant's claim of ineffective assistance of counsel fails.

## III.

*Guilty Plea*

Appellant claims that the guilty plea he entered on April 15, 2002, was in error because he was under the influence of alcohol and Paxil at the time. A criminal defendant may withdraw a guilty plea if the withdrawal is necessary to correct a manifest injustice. Minn. R.Crim. P. 15.05, subd. 1. A guilty plea must be accurate, voluntary, and intelligent to be valid. *Butala v. State,* 664 N.W.2d 333, 338 (Minn.2003). If a guilty plea is inaccurate, involuntary, or unintelligent, a manifest injustice occurs, and a defendant should be allowed to withdraw his plea. *Alanis v. State,* 583 N.W.2d 573, 577 (Minn.1998). However, a record showing a voluntary guilty plea may preclude a claim that the plea was involuntary. *See State v. Ecker,* 524 N.W.2d 712, 719 (Minn.1994) (holding that the contested plea was voluntary because defendant repeatedly stated on the record that he was making his own decision).

Appellant asserts in his pro se supplemental brief that he was on both Paxil, a commonly prescribed anti-depressant medication, and alcohol at the time that he entered the guilty plea. However, at the plea hearing, appellant testified that he had time to consider what he was doing and that he understood what rights he was foregoing. Additionally, at the time he entered the guilty plea, appellant testified that he was not under the influence of any alcohol or drugs. Because appellant clearly testified that he was not under the influence of drugs or alcohol and that he understood the ramifications of his guilty plea, appellants claim that the plea was involuntary also fails.

## DECISION

Because the record is vacant as to the factors the district court relied on when it revoked appellant's probation, we reverse and remand.

**Reversed and remanded.**