**STATE of Minnesota, Respondent,**

v.

**J.E.S., Appellant.**

**No. A08–0668.**

Court of Appeals of Minnesota.

March 24, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Mike Freeman, Hennepin County Attorney, Michael K. Walz, Assistant County Attorney, Minneapolis, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by ROSS, Presiding Judge; JOHNSON, Judge; and RANDALL, Judge.

## OPINION

Randall, Judge.*

The juvenile court revoked J.E.S.'s EJJ probation because he possessed a weapon in violation of the terms of his probation. Although the probation proceedings were commenced before J.E.S. turned 21, possession of the weapon was not alleged until after J.E.S. turned 21. The juvenile court incorrectly based revocation of J.E.S.'s probation on J.E.S.'s possession of a weapon. We reverse and remand.

## FACTS

In September 2003, 17-year-old J.E.S. was arrested and charged with aiding and

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

abetting aggravated robbery and aiding and abetting attempted aggravated robbery. In February 2004, the juvenile court designated J.E.S. an extended jurisdiction juvenile (EJJ) after he had pleaded guilty to the attempt charge. The juvenile court imposed a sentence of 48 months, which constituted a departure from the presumptive sentence of 24 months. However, the juvenile court stayed the sentence subject to conditions enumerated in his EJJ contract. Those conditions required him to maintain full-time employment, "promptly" report new contacts with law enforcement, and prohibited him from possessing any "assaultive weapon[s]."

Between August 2005 and July 2006, the juvenile court filed three apprehension and detention (A & D) orders alleging that J.E.S. had violated the terms of his EJJ probation. However, none of these A & D orders resulted in revocation of J.E.S.'s probation. On May 22, 2007, the juvenile court issued an A & D order containing allegations that J.E.S. had violated several of the terms of his EJJ probation by being cited for fare evasion, failing to report this citation as well as other contacts with police, and failing to maintain full-time employment. The same day, J.E.S. was arrested on suspicion of criminal sexual conduct in connection with an incident occurring at E.S.'s home on May 18, 2007. According to E.S.'s testimony, J.E.S. attempted to sexually assault her 17–year–old granddaughter while in E.S.'s home. When E.S. physically intervened to protect her granddaughter, J.E.S. pulled out a TASER[1] and "tried to stick" E.S. with it.

Officer James Lopez arrested J.E.S. at the probation office in downtown Minneapolis. In the probation officer's presence, Officer Lopez handcuffed J.E.S. and asked him if he had any weapons. J.E.S. stated that he had a TASER in his pocket, and Officer Lopez seized it.

On May 23, 2007, the day after J.E.S.'s arrest, the juvenile court issued a revised A & D order that included the May 22 arrest for criminal sexual conduct. The revised A & D order did not mention possession of the TASER. On August 13, 2007, J.E.S. turned 21. In October 2007, J.E.S. was acquitted of the criminal-sexual-conduct charges stemming from the alleged assault on E.S.'s granddaughter. His counsel requested that the juvenile court discharge him from the court's extended jurisdiction because he had turned 21, but the court ruled that the May 23, 2007 A & D order "toll[ed] the time period ... of his EJJ probation." The court therefore scheduled a review hearing for November 2007. On November 28, 2007, the parties appeared for the scheduled uncontested review hearing. Because the parties did not reach agreement on the matter, the juvenile court scheduled a contested hearing for January 2008. That same day,[2] November 28, the juvenile court filed a notification of violation hearing, in which probation alleged that J.E.S. had possessed a TASER on May 22, 2007, in violation of the terms of his probation. On January 2, 2008, the parties appeared for a contested *Morrissey* hearing. *See State v. Modtland,* 695 N.W.2d 602, 605 (Minn.2005) (stating defendants must be afforded procedural due process when courts revoke parole or probation under

---

**1.** "TASER" is an acronym for "Thomas A. Swift Electric Rifle." It has been described as an electric "stun gun" that shoots two little darts into a live target (human or animal) and the combined current forms a circuit that temporarily stuns and incapacitates, yet the stunning effect has an almost immediate cessation. Its general purpose is to allow the user to briefly incapacitate the target for reasons like self-defense, capture, and detention.

**2.** J.E.S. turned 21 on August 13, 2007.

*Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

At the hearing, the defense argued that the juvenile court could not rely on the evidence regarding the TASER because it had not been alleged until several months after J.E.S. turned 21. The prosecution argued that the facts leading to the allegation regarding J.E.S.'s possession of the TASER occurred before J.E.S.'s 21st birthday and that the November documentation of the TASER was essentially an "amend[ment]" of the A & D order that had been filed before J.E.S.'s 21st birthday. The juvenile court took the matter under advisement. On January 9, 2008, the juvenile court issued an order revoking J.E.S.'s probation and executing his 48–month sentence. J.E.S. appeals.

## ISSUES

I. Did the juvenile court improperly base revocation of J.E.S.'s probation on a violation that was alleged after J.E.S. turned 21?

II. Did the juvenile court abuse its discretion in failing to find mitigating factors?

## ANALYSIS

### I.

■ J.E.S. argues that the juvenile court lacked jurisdiction to base revocation of his probation on possession of the TASER because that violation was not alleged until after his 21st birthday. The juvenile court held that it could consider the evidence regarding the TASER under the "relation-back" theory. The juvenile court claimed it had jurisdiction to complete the EJJ probation revocation hearing because it was "commenced" before J.E.S.'s 21st birthday. Thus, the juvenile court ruled it had jurisdiction to revoke probation based on any of the allegations in the November 28 notice even though the hearing was to be held after J.E.S.'s 21st birthday. We disagree. The record is clear that the probation department, despite having notice of the TASER incident on May 22, 2007 (and thus a full three months before J.E.S.'s 21st birthday) did not allege the TASER as a probation violation until November 28, 2007, a full three months after J.E.S. turned 21. It is true, as the juvenile court pointed out, that J.E.S., by having notice of the allegation in November, did have two months to prepare for the contested hearing in January 2008. But we conclude that the November allegation preceding a later January hearing was moot because the juvenile court lost the power to use the TASER incident as a foundation for a probation hearing since the November allegation took place three months after his 21st birthday.

■ When a statute provides the basis for the juvenile court's jurisdiction over the juvenile, the issue of jurisdiction is a question of law subject to de novo review. *State v. Behl,* 564 N.W.2d 560, 563 (Minn. 1997). An EJJ prosecution is "a blending of juvenile and adult criminal dispositions that extends jurisdiction over a young person to age twenty-one and permits the court to impose both a juvenile disposition and a criminal sentence." *In re Welfare of B.N.S.,* 647 N.W.2d 40, 42 (Minn.App. 2002); *see also* Minn.Stat. §§ 260B.130, subd. 4, 260B.193, subd. 5(b) (2008). "Execution of the adult sentence is stayed so long as the offender does not violate the provisions of the juvenile disposition and does not commit a new offense." *B.N.S.,* 647 N.W.2d at 42; *see also In re Welfare of S.J.T.,* 736 N.W.2d 341, 354 (Minn.App. 2007), *review denied* (Minn. Oct. 24, 2007).

Section 260B.193 provides the limitations of the juvenile court's jurisdiction: "The jurisdiction of the court over an extended jurisdiction juvenile, with respect to the offense for which the individual was

convicted as an extended jurisdiction juvenile, extends until the offender becomes 21 years of age, unless the court terminates jurisdiction before that date." Minn.Stat. § 260B.193, subd. 5(b) (2006). Subdivision 5(c) makes it clear that under some circumstances, the juvenile court retains jurisdiction after the offender turns 21:

> The juvenile court has jurisdiction to designate the proceeding an extended jurisdiction juvenile prosecution, to hold a certification hearing, or to conduct a trial, receive a plea, or impose a disposition ... if:
> (1) an adult is alleged to have committed an offense before the adult's 18th birthday; and
> (2) a petition is filed ... before the adult's 21st birthday.

Minn.Stat. § 260B.193, subd. 5(c) (2008). Probation revocation does not appear to be a "disposition" as that term is used in subdivision 5(c). *See* Minn.Stat. § 260B.198, subd. 1 (2006) (listing possible dispositions but not mentioning probation revocation); *In re Welfare of V.D.M.*, 623 N.W.2d 277, 280 (Minn.App.2001) (stating that in probation revocation case, subdivision (c) is "instructive" but not "controlling"), *review denied* (Minn. May 15, 2001).

In *V.D.M.*, this court held that a juvenile court "has jurisdiction [after the juvenile turns 21] to complete an EJJ probation revocation proceeding that was commenced before the individual's 21st birthday." 623 N.W.2d at 280. We reasoned, "If a juvenile court can conduct a trial, receive a plea, or impose a disposition on an individual who has turned 21, it is reasonable that the court also has jurisdiction to complete an EJJ probation revocation proceeding that was commenced before the individual's 21st birthday." *Id.* at 280.

The juvenile court here correctly stated that under *V.D.M.*, jurisdiction depends on whether the revocation proceeding was "commenced" pursuant to Minn. R. Juv. Delinq. P. 19.11 before J.E.S. turned 21. The district court answered that question in the affirmative on two theories. First, the juvenile court reasoned that the May 22 and 23 orders were filed before J.E.S. turned 21 and that it could consider the later-added TASER allegation under the "relation-back theory," citing Minn. R. Juv. Delinq. P. 6.04, which governs the amendment of a charging document. But, as the juvenile court acknowledged, Minn. R. Juv. Delinq. P. 19.11 does not provide for retroactively amending an A & D order. Second, the juvenile court reasoned that J.E.S. had received notice of the TASER allegation before the revocation hearing. But the key inquiry here, as stated above, is not whether J.E.S. had notice before the January 2008 revocation hearing, but whether the probation revocation proceeding was properly commenced under rule 19.11 before J.E.S. turned 21 in August 2007. *See V.D.M.*, 623 N.W.2d at 280. Commencement is defined by the rules of juvenile delinquency procedure:

> [R]evocation of a stayed sentence shall be commenced by the issuance of a warrant or a summons by the court. The warrant or summons shall be based upon a written report showing probable cause to believe that the probationer has violated any of the provisions of the disposition order or committed a new offense. The written report shall include a description of the surrounding facts and circumstances upon which the *request for revocation is based.*

Minn. R. Juv. Delinq. P. 19.11, subd. 1(A).

■ By the terms of rule 19.11, a probation violation that serves as the basis for commencing revocation proceedings *must be alleged in a written report* on which the warrant or summons commencing the revocation proceedings is based.

■ In this case, possession of the weapon was not alleged as a basis for revocation until three months after J.E.S.'s 21st birthday, long after the warrant was issued. At the time the probation revocation proceedings were commenced, the prosecutor did not allege that J.E.S. had possessed a TASER weapon in violation of the terms of his probation, much less provide a description of the surrounding facts and circumstances of that incident. The probation officer admitted at the *Morrissey* hearing that he was aware that J.E.S. had possessed a TASER when he issued the May 23 A & D order, and conceded that he had "neglect[ed]" to allege that incident. We conclude that because the TASER incident was alleged after J.E.S.'s 21st birthday, it could not serve as a proper ground for revocation. *See V.D.M.*, 623 N.W.2d at 280; Minn. R. Juv. Delinq. P. 19.11, subd. 1(A).

Our decision is consistent with *V.D.M.*, which held that a juvenile court "has jurisdiction to complete an EJJ probation revocation proceeding that was commenced before the individual's 21st birthday." 623 N.W.2d at 280. The juvenile court still has jurisdiction to consider revocation based on the violations that were *alleged* when the revocation was commenced on May 22 and 23, 2007.

Revocation of J.E.S.'s probation is reversed. It is unclear from the record whether the other two probation violations found by the court are independently sufficient to sustain revocation. In an exchange with defense counsel on the record, the district court alluded to the possibility that the citation for fare evasion amounted to a "technical violation" that would not sustain revocation of J.E.S.'s probation. The district court did not rule on that question.

The case is remanded for consideration of whether the remaining violations alleged in the May 22 and 23, 2007 A & D orders are sufficient grounds to revoke J.E.S.'s probation. *See Modtland*, 695 N.W.2d at 608 (reversing and remanding where findings insufficient to support revocation); *Erickson v. State*, 702 N.W.2d 892, 897 (Minn.App.2005) (same).

## II.

■ J.E.S. argues that the juvenile court abused its discretion by failing to consider mitigating factors that showed he is amenable to probation. "A district court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *State v. Osborne*, 732 N.W.2d 249, 253 (Minn.2007) (quotation omitted).

■ Upon making the three findings required by *State v. Austin*, 295 N.W.2d 246, 250 (Minn.1980), a juvenile court is required to execute a sentence unless the court finds mitigating factors that justify continuing the stay. *State v. B.Y.*, 659 N.W.2d 763, 770 (Minn.2003); *see also* Minn.Stat. § 260B.130, subd. 5; Minn. R. Juv. Delinq. P. 19.11, subd. 3(C)(3). Mitigating factors include amenability to treatment, successful completion of a treatment program, and whether the violations show a potential for recidivism. *B.Y.*, 659 N.W.2d at 770.

■ In *B.Y.* the supreme court reversed revocation of a juvenile offender's probation on the ground that he had successfully completed a "rigorous" year-long rehabilitation program. *Id.* The supreme court emphasized that the only probation violation that had been alleged in writing was a single curfew violation and that this condition appeared to be one imposed by the probation officer rather than the court. *Id.* at 771–72.

There is no indication in the record that any of the mitigating factors identified or considered by the court in *B.Y.* are present in this case. On the contrary, J.E.S.'s probation officer testified, "I would not characterize [J.E.S.'s] stint on EJJ probation as a success at all." On this issue, the juvenile court did not abuse its discretion in declining to find mitigating factors.

## DECISION

The juvenile court revoked J.E.S.'s probation based on a violation that was not alleged until after J.E.S. turned 21. We reverse and remand for the juvenile court to reconsider revocation based solely on violations alleged in the May 22 and 23, 2007 A & D orders.

**Reversed and remanded.**